**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------X
ARTESIA MCMILLAN,                                    Case No.

                              Plaintiff,                    **COMPLAINT**
        -against-
                                                            **JURY TRIAL DEMANDED**

EXPRESS, LLC.,

                              Defendant.
------------------------------------------------------------------X

Plaintiff, ARTESIA MCMILLAN, (hereinafter "Plaintiff") by and through her attorneys,

SHALOM LAW, PLLC, complaining of Defendant,  EXPRESS, LLC (hereinafter, "Express" or

"Defendant"), and upon information and belief states as follows:

### PRELIMINARY STATEMENT

1. This is an action for declaratory, injunctive and equitable relief, as well as monetary

   damages, to redress Defendants' willful violation of the Title VII of the Civil Rights Act

   of 1964 ("Title VII"), § 296 of the New York State Executive Law (the "New York State

   Human Rights Law" or the "NYSHRL"), and § 8-107 [1] of the Administrative Code of

   City of New York (the "New York City Human Rights Law" or the "NYCHRL").

2. Plaintiff is seeking damages to redress the injuries suffered as a result of being employed

   in a hostile work environment where she was repeatedly sexually harassed, discriminated,

   and retaliated against by Defendant, her former employer, based on her gender.

3. Plaintiff further complains of retaliation for exercising her statutory rights under Title VII,

   the NYSHRL, and the NYCHRL and complaining of the sexual harassment, discrimination

   and retaliation within the workplace.

4.  Indeed, rather than availing itself of the protective laws and regulations enacted by the New York State and City legislatures to prevent the very such conduct herein and protect employees such as Plaintiff.

5.  Instead, Defendant subjected Plaintiff to a pervasive hostile work environment.

6.  Defendant has ignored complaints by an employee- who has the temerity to denounce such conduct, all to silence and protect its reputation.

7.  This institutional indifference, ignorance of the law, and outright hostility and retaliation to the rights and dignity of a female employee has created and fostered a permissive and toxic culture at Express in which Plaintiff was subject to lude comments on the basis of her gender.

## JURISDICTION AND VENUE

8.  The jurisdiction of this Court over this controversy is invoked pursuant to 28 U.S.C. §§ 1331 and 1343, as this action involves federal questions. The Court has supplemental jurisdiction over the New York State and New York City causes of action as the facts supporting these claims also arise from the same nucleus of events forming the basis for the federal causes of action.

9.  Venue is appropriate under 28 U.S.C. § 1391 (b) and (c) (Substantial Part of the Events and Contacts), as a substantial part of the acts or omissions giving rise to the claims alleged herein occurred within this judicial district, the Defendant regularly conducts business in this district and the Defendant is subject to personal jurisdiction in this district.

10. This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

## ADMINISTRATIVE PREREQUISITES

11. A Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging unlawful discrimination and retaliation in violation of Title VII has been filed by Plaintiff.

12. The EEOC subsequently issued Plaintiff a Notice of Right to Sue ("Right to Sue"), received on March 3, 2020.

13. Following the commencement of this action, a copy of this Complaint will be served both on the New York City Commission on Human Rights and the Office of the Corporation Counsel of the City of New York, thereby satisfying the notice requirement of the New York City Administrative Code.

14. Plaintiff has satisfied all other prerequisites to the filing of this action.

## PARTIES

15. Plaintiff was and still is a resident of the County of Queens, State of New York.

16. Defendant Express is a popular American fashion retailer that caters and sellers the latest trends of clothing to young men and women. Express operated 631 stores in the United States, and Puerto Rico and employs approximately 18,000 associates in stores both nationally and internationally.

17. That at all times hereinafter mentioned, Defendant was and is an entity duly organized and existing under and by virtue of the laws of the State of New York.

18. That at all times hereinafter mentioned, Defendant was and is domestic corporate entity duly organized and existing under and by virtue of the laws of the State of New York.

19. That at all times hereinafter mentioned, Defendant was and is domestic for-profit entity duly authorized to conduct business in the State of New York.

## FACTUAL ALLEGATIONS

20. Plaintiff is a female, and as such is a member of a protected class.

21. Plaintiff commenced employment with Express on or about June 2012.

22. That at all times herein relevant, Plaintiff was employed by Express as an Assistant Store Manager.

23. As an Assistant Store Manager at one of Defendant's retail stores, Plaintiff was responsible for overseeing the store's appearance, managing the store's inventory, assisting customers, and directing and guiding associates at her store.

24. At all times herein relevant, Plaintiff's work performance as an Assistant Store Manager was satisfactory.

25. Yet, in February 2019, after Plaintiff had spent more than **seven years** employed for Defendant, Plaintiff began to be the target of sexual harassment at her retail store location.

26. In February of 2019, Defendant placed two other managers at Plaintiff's store, co-worker and co-manager Mr. Willfred Topey (hereinafter, "Mr. Topey") and Interim Store Manager, Mr. Ferdinand Butron (hereinafter, "Mr. Butron").

27. Accordingly, from February of 2019 until Plaintiff's constructive termination in November of 2019, Express harbored and condoned a work environment where women are viewed as sexual prey by their male supervisors and colleagues and subjected to sexually offensive conduct and a hostile work environment.

28. Mr. Topey's inappropriate sexual conduct began the very first time Mr. Topey laid eyes on Plaintiff in February 2019 – *before* they had even spoken to each other for the first time.

29. On Mr. Topey's first day, while Plaintiff was conversating with another associate, Mr. Topey walked past Plaintiff and muttered something about how she was "blessed by God."

Plaintiff ignored the comment and continued her conversation with her colleague, but Mr. Topey was not done.

30.  When Plaintiff later went over to introduce herself to Mr. Topey for the first time, Mr. Topey again made a remark to Plaintiff about **"how blessed and beautiful"** she was. Plaintiff was extremely uncomfortable, but again let the comment go.

31.  Thereafter, however, Mr. Topey consistently and persistently subjected Plaintiff to increasingly inappropriate sexual language and conduct.

32.  Repeatedly, **every single shift** that Plaintiff worked with Mr. Topey, Mr. Topey would ask to either buy Plaintiff lunch or take her out to dinner. Time and time again, Plaintiff expressly declined.

33.  However, Plaintiff's refusals did not deter Mr. Topey's advances. Instead, Mr. Topey continued with his unacceptable sexual advances in the workplace.

34.  By way of example, Mr. Topey once informed Plaintiff that the night before **he had "went home after leaving work and cooked for [her]"** so that he could bring her lunch despite her express rebuffs.

35.  As if that was not enough, Mr. Topey even **tried to hand feed that lunch to Plaintiff.**

36.  Yet, despite Plaintiff's repeated straightforward refusals of Mr. Topey's advances, Mr. Topey still made sure that it was very well-known amongst other co-workers and associates that he was not going to give up.

37.  Mr. Topey frequently talked to other associates about Plaintiff. Mr. Topey went on to inform them that he loved working at that store because of Plaintiff and that he wanted to take Plaintiff out. Mr. Topey even went so far to probe other associates about how Plaintiff was feeling, or where she was in the building.

38. Mr. Topey would frequently **discuss Plaintiff's body shape** with associates and customers alike, making highly inappropriate comments about **"how good she looks."**

39. Moreover, Mr. Topey would also approach Plaintiff and attempt to **put her jacket or coat on her body for her** or **to slide her bag up her shoulder.**

40. Each time Mr. Topey tried to dress Plaintiff in such an inappropriate manner, Plaintiff would pull away from him and state, **"No, stop, I can dress myself."**

41. Time and time again, Plaintiff rebuffed Mr. Topey's sexual advances and repeatedly informed him that she was **<u>extremely uncomfortable</u>**.

42. However, in mid-April of 2019, after numerous rejections, Mr. Topey began his retaliation campaign and became increasingly aggressive towards Plaintiff and other female associates.

43. Mr. Topey began tirelessly yelling at Plaintiff and the other females he supervised at Express day after day, scream-talking down to them whenever he did not get his way.

44. Mr. Topey even encouraged the same degrading behavior to other male employees at Express.

45. After being unable to tolerate such unlawful and inappropriate conduct any further, Plaintiff applied to transfer to another job position to get away from Mr. Topey,

46. Plaintiff was then informed that Mr. Topey interfered with the transfer attempt by requesting to keep working with Plaintiff.

47. Plaintiff's transfer request was denied, and she was forced to remain under Mr. Topey's control.

48. Feeling helpless along with the fear of losing her job if reported to management, Plaintiff was left with no other option.

49.  Plaintiff filed a formal report against Mr. Topey to his direct superior- Mr. Butron.

50.  Unfortunately, upon receiving Plaintiff's report about Mr. Topey's behavior, Mr. Butron only <u>furthered and fostered</u> Mr. Topey's sexual harassment campaign by **reprimanding and retaliating against Plaintiff for "not getting along."**

51.  Upon information and belief, at the time that Plaintiff reported Mr. Topey, Mr. Butron was aware of other female employees who had complained of Mr. Topey's sexual behavior, and yet still chose to do nothing about it.

52.  Mr. Topey and Mr. Butron created **an inescapable echo chamber of discrimination and sexual harassment at Express** that left Plaintiff and the other females at her store location feeling hopeless.

53.  Yet, as if this discriminatory echo chamber was not enough, things got worse on or about **June of 2019, when Plaintiff was notified that she was pregnant**.

54.  According to her physician, Plaintiff's pregnancy was high risk, which meant she had a high likelihood of experiencing pregnancy complications, such as exorbitant blood pressure levels.

55.  Subsequently, Plaintiff immediately informed Mr. Butron about her pregnancy, its risks, and her need for accommodations. As a pregnant woman, Plaintiff then fell into a **second protected class.**

56.  However, upon information and belief, instead of easing Plaintiff's workload, Mr. Butron continued to pile work onto Plaintiff.

57.  Mr. Butron proceeded to assign Plaintiff six or seven-hour shifts, without a break and required her to make laborious merchandising moves that included lifting heavy wooden shelves, attaching the shelves to the wall, removing old shelving, and climbing ladders high

off the floor. Yet despite the heavy workload and risk to her pregnancy Plaintiff continued to complete the work asked of her.

58. Later, when Plaintiff returned from a vacation in or about September of 2019, Plaintiff was far enough along that she was showing, and Mr. Topey leaped on this opportunity to heighten his sexual harassment and retaliatory campaign against the pregnant Plaintiff.

59. Mr. Topey bombarded Plaintiff with **newly heightened levels of harassment**, continuing and worsening his incessant degrading and yelling at both Plaintiff and the other females at Express.

60. Mr. Topey's behavior was so severely impacting the work environment at Express that Plaintiff again reported his **"nasty and mean" behavior** to Mr. Butron, explaining how the behavior was **"disturbing to work with."**

61. However, despite her renewed complaints, Express again turned a blind eye to Mr. Topey's unlawful behavior.

62. Eventually, this heightened sexual harassment and retaliation **led Plaintiff to be hospitalized on October 13, 2019.**

63. After Plaintiff was released from the hospital, she again felt she had to report Mr. Topey's egregious conduct, but this time, she chose to avoid reporting any of her complaints to Mr. Butron, since she knew that it would fall on deaf ears.

64. Instead, Plaintiff reported Mr. Topey to Mr. Mark Symkowiak (hereinafter "Mr. Symkowiak") in the Defendant's Human Resources ("HR") Department.

65. Plaintiff explained to Mr. Symkowiak that she was **<u>extremely uncomfortable</u>** working with Topey and that she did not want to be forced to complete the upcoming shifts that she shared with him.

66. However, to Plaintiff's surprise, Mr. Symkowiak took no action and instead expressed that he was **"annoyed"** with <u>her</u> and flatly informed her that she would face the consequences of missing scheduled shifts.

67. Additionally, Mr. Butron was informed about Plaintiff's complaint to HR, and in response, compounding Plaintiff's suffering, Mr. Butron **again retaliated** against Plaintiff by refusing to give her a single work shift the following week.

68. As soon as Plaintiff was made aware of her blank work schedule, she confronted Mr. Butron about it.

69. Mr. Butron shamelessly responded that he had taken Plaintiff off the schedule **"after [she] complained to HR."**

70. Though Plaintiff received work the week after, Mr. Butron made a point of informing Plaintiff that he had not scheduled her for that week and the only reason she was working was because a visiting manager had scheduled her.

71. Instead of being treated with fairness and dignity as a woman in the workplace, **Plaintiff was a female punching bag for her male supervisors at Express**.

72. Even after multiple reports to her supervisors about the unlawful workplace behavior at Express, Plaintiff's complaints were only met with <u>retaliation</u>.

73. On November 5, 2019, Plaintiff was forced to resign after speaking up and reporting the unlawful conduct she experienced within the workplace.

## AS AND FOR A FIRST CAUSE OF ACTION

### Discrimination in Violation of Title VII of the Civil Rights Act of 1964

74. Plaintiff hereby repeats, reiterates, and re-alleges each and every allegation as contained in each of the preceding paragraphs as if fully set forth herein.

75. By the actions described above, among others, Defendant has discriminated against Plaintiff on the basis of her gender and/or pregnancy in violation of the Title VII by denying Plaintiff the same terms and conditions of employment available to others based on her gender and pregnancy, including, but not limited to, by subjecting her to a hostile work environment, allowing her to be sexually harassed, refusing to give her any kind of lightened duty for her pregnancy, and finally by constructively terminating her employment.

76. As a direct and proximate result of all of this extensive unlawful conduct by Defendant, in violation of the Title VII, Plaintiff has suffered, and continues to suffer, harm for which she is entitled to an award of damages to the greatest extent permitted by law, including, but not limited to, monetary and/or economic harm, for which she is entitled to an award of monetary damages.

77. As a direct and proximate result of Defendant's unlawful and discriminatory conduct in violation of Title VII, Plaintiff has suffered and continues to suffer, mental anguish and emotional distress, for which she is entitled to an award of compensatory damages.

78. Defendant's unlawful and discriminatory actions constitute malicious, willful, wanton and/or reckless indifference to Plaintiff's protected rights under Title VII, for which Plaintiff is entitled to an award of punitive damages.

79. Plaintiff is also entitled to an award of attorneys' fees and costs.

## AS AND FOR A SECOND CAUSE OF ACTION

### Retaliation in Violation of Title VII of the Civil Rights Act of 1964

80. Plaintiff hereby repeats, reiterates and re-alleges each and every allegation as contained in each of the preceding paragraphs as if fully set forth herein.

81. Title VII specifically prohibits employers from taking adverse actions that would "dissuade a reasonable worker from making or supporting a charge of discrimination."

82. However, at least three of Defendant's supervisors – Mr. Topey, Mr. Butron, and Mr. Symkowiak – all engaged in retaliatory behavior against the Plaintiff when she attempted to resist the sexual harassment, discrimination, and retaliation she was being subjected to.

83. Further, each retaliatory act came mere <u>days</u> after each of Plaintiff's complaints, clearly evidencing the causal connection between each complaint and the retaliation.

84. Defendant's egregious and pervasive practice of taking adverse actions against those who complain of discrimination and sexual harassment stifles Express workers from exercising their statutory rights and is thereby unlawful under Title VII.

85. That as a direct result of the foregoing, the Plaintiff has been damaged in an amount which exceeds the jurisdictional limits of all lower courts.

## AS AND FOR A THIRD CAUSE OF ACTION

### Discrimination Pursuant to the New York State Human Rights Law ("NYSHRL")

86. New York State Executive Law §296 provides that it shall be unlawful "(a) For an employer or licensing agency, because of the age, race, creed, color, national origin, sexual orientation, military status, sex, disability, genetic predisposition or carrier status, or marital status of any individual, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

87. Defendant engaged in an unlawful discriminatory practice in violation of the NYSHRL by creating and maintaining discriminatory working conditions, discriminating against the Plaintiff because of her gender, sexually harassing her, and otherwise subjecting the

Plaintiff to a hostile work environment.

88.  That as a direct result of the foregoing, the Plaintiff has been damaged in an amount which

exceeds the jurisdictional limits of all lower courts.

## AS AND FOR A FOURTH CAUSE OF ACTION

### Retaliation Under the New York State Human Rights Law ("NYSHRL")

89.  Plaintiff repeats, realleges, and restates each and every paragraph above as if said

paragraphs were more fully set forth herein at length.

90.  New York State Executive Law §296(7) provides that it shall be an unlawful

discriminatory practice "[f]or any person engaged in any activity to which this section

applies to retaliate or discriminate against any person because she has opposed any

practices forbidden under this article."

91.  Defendant engaged in an unlawful discriminatory practice by retaliating, continuing and

escalating the discrimination and hostile work environment to which the Plaintiff was

subjected, and otherwise mistreating the Plaintiff because of Plaintiff's opposition to the

unlawful employment practices of Defendant.

92.  Defendant engaged in an unlawful discriminatory practice by retaliating against the

Plaintiff for lawfully exercising her rights and making complaints regarding Defendant's

violation of New York State Executive Law.

93.  That as a direct result of the foregoing, the Plaintiff has been damaged in an amount which

exceeds the jurisdictional limits of all lower Courts.

## AS AND FOR A FIFTH CAUSE OF ACTION

### Discrimination Under the New York City Human Rights Law ("NYCHRL")

94.  Plaintiff repeats, realleges, and restates each and every paragraph above as if said

paragraphs were more fully set forth herein at length.

95.  The Administrative Code of City of NY § 8-107(1)(a) provides that it shall be an unlawful

discriminatory practice "[f]or an employer or an employee or agent thereof, because of the

actual or perceived age, race, creed, color, national origin, gender, disability, marital status,

sexual orientation or alienage or citizenship status of any person, to refuse to hire or employ

or to bar or to discharge from employment such person or to discriminate against such

person in compensation or in terms, conditions or privileges of employment."

96.  Defendant engaged in an unlawful discriminatory practice in violation of New York City

Administrative Code Title 8, §8-107(1)(a) by creating and maintaining discriminatory

working conditions and a hostile work environment, discriminating against the Plaintiff

because of her disability, denying Plaintiff's request for a reasonable accommodation, and

otherwise subjecting the Plaintiff to a hostile work environment.

97.  That as a direct result of the foregoing, the Plaintiff has been damaged in an amount which

exceeds the jurisdictional limits of all lower Courts.

## AS AND FOR A SIXTH CAUSE OF ACTION

### Retaliation Under New York City Administrative Code

98. Plaintiff repeats, realleges, and restates each and every paragraph above as if said

paragraphs were more fully set forth herein at length.

99. The New York City Administrative Code Title 8, §8-107(1)(e) provides that it shall be

unlawful discriminatory practice:

> "For an employer . . . to discharge . . . or otherwise discriminate against any
> person because such person has opposed any practices forbidden under this
> chapter. . . "

100.        Defendant engaged in an unlawful discriminatory practice in violation of §8-

107(1)(e) by retaliating, continuing and escalating the discrimination and hostile work

environment to which the Plaintiff was subjected, and otherwise discriminating against the Plaintiff because of Plaintiff's opposition to the unlawful employment practices of Defendant Express and its agents and supervisors.

101.     Defendant engaged in an unlawful discriminatory practice by retaliating against the Plaintiff for making a complaint regarding Defendant's violation of the NYCHRL.

102.     That as a direct result of the foregoing, the Plaintiff has been damaged in an amount which exceeds the jurisdictional limits of all lower courts.

### DEMAND FOR TRIAL BY JURY

103.     Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury in this action.

### INJURY AND DAMAGES

104.     As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss and/or partial loss of a career and the loss and/or partial loss of a salary, bonuses, benefits and other compensation which such employment entails, out-of-pocket medical expenses, future pecuniary losses, emotional pain, suffering, inconvenience, injury to reputation, loss of enjoyment of life, and other non-pecuniary losses.

105.     Plaintiff has further experienced severe emotional and physical distress.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully requests a judgment against the Defendant:

A.   Declaring that the Defendant engaged in unlawful employment practice prohibited by federal and state law, including Title VII of the Civil Rights Act of 1964, New York State Executive Law §296 et. seq. and New York City Administrative Code Title 8, §8-107 et. seq.; and that

the Defendant and its agents sexually harassed and discriminated against Plaintiff on the basis

of her gender, as well as retaliated against her on the basis of her lawful complaints of this

discrimination and harassment;

B.   Awarding damages to the Plaintiff, retroactive to the date of her termination, for all lost wages

and benefits and future lost wages, including lost opportunity, resulting from Defendant's

unlawful employment practices;

C.   Awarding Plaintiff compensatory damages for mental, emotional, psychological, and physical

injuries, distress, pain and suffering, and for injury to her reputation in an amount that exceeds

the jurisdictional limit of all lower courts;

D.   Awarding Plaintiff punitive damages;

E.   Awarding Plaintiff attorney's fees, costs, and expenses;

F.   Awarding Plaintiff such other and further relief as the Court may deem equitable, just and

proper to remedy the Defendant's unlawful employment practices.


Respectfully Submitted,

Dated:  May 31, 2020                                  **SHALOM LAW, PLLC**
Forest Hills, New York

/s/ *Jonathan Shalom*
Jonathan Shalom, Esq.
105-13 Metropolitan Avenue
Forest Hills, NY 11415
(718) 971-9474
Jshalom@JonathanShalomLaw.com
**ATTORNEYS FOR PLAINTIFF**